UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------X
OMAR XOCHIMITL,

                      Petitioner,

     -against-

CHRISTOPHER MILLER,

                    Respondent.
--------------------------------------------------------------X

**REPORT AND RECOMMENDATION
20 CV 5510 (MKB)(LB)**

**BLOOM, United States Magistrate Judge:**

      Petitioner, Omar Xochimitl, files this *pro se* petition for a writ of habeas corpus ("the petition") pursuant to 28 U.S.C. § 2254 challenging his 2012 New York Supreme Court, Kings County conviction of first-degree manslaughter. Petition ("Pet."), ECF No. 2 at 1.[1] The Honorable Margo K. Brodie referred this petition to me for a Report and Recommendation in accordance with 28 U.S.C. § 638(b). For the reasons set forth below, it is respectfully recommended that the petition should be denied.

## BACKGROUND

**I.    The Underlying Crimes**

      According to the evidence adduced at trial,[2] overnight on March 22 into March 23, 2010, petitioner[3] and his co-defendant, Julio Iglesias ("Iglesias"), killed nineteen-year-old Gavin Torres ("Torres"). Petitioner and Iglesias were involved with affiliated gangs. Pre-Trial Transcript ("P.T.T."), ECF No. 8-1 at 30-31, 92-94; Trial Transcript ("T.T."), ECF No. 8-3 at 911. Iglesias met Torres on March 22, 2020, when Torres started working at the grocery store where Iglesias worked. T.T. at 259-60. That day, Iglesias called petitioner, told him that he had a

---

[1] For ease of reference, all citations are to the ECF pagination of the state court record and the parties' briefs.
[2] Petitioner was tried by jury in Kings County Supreme Court from October 10 to November 8, 2012, before the Honorable Vincent Del Giudice. The trial transcript begins at ECF No. 8-3, page 2 and concludes at page 1266.
[3] The trial transcript also refers to petitioner by his other name, Jose Perez, and by his nickname "Doll." See T.T. at 429.

problem with his new co-worker, Torres, and asked petitioner to meet him later that evening. Id. at 442; 457-58. Petitioner and Iglesias met that night near Avenue J and Coney Island Avenue in Brooklyn. Id. at 442. Shortly after they met, petitioner and Iglesias saw Torres. Id. Petitioner and Iglesias chased Torres; when petitioner reached Torres, he stabbed him in the back and kept running. Id. at 442-43. Petitioner heard gunshots and threw the knife on the street as he ran. Id. Torres was stabbed three times and shot twice. Id. at 286-89. Torres was pronounced dead at Kings County Hospital.[4] Id. at 497-98.

New York City Police Department ("NYPD") Officers Christopher Deats and Allison Rodriguez were patrolling the area in an unmarked police vehicle. Id. at 483-84. The officers heard a gunshot at approximately 12:15 a.m. while driving on Coney Island Avenue approaching Avenue J. Id. at 484-85. As the officers turned onto Avenue J, they saw Iglesias and Torres standing, and a third man running. Id. at 485-86. The officers then saw Iglesias shoot Torres twice. Id. at 488, 491. The officers chased Iglesias by foot for approximately one block and apprehended him.[5] Id. at 562-64.

NYPD Detectives Joseph Perry and James Normile were assigned to the homicide investigation. Id. at 935-36. In April 2011, Detective Perry assigned the case to Detective John Kelly of the NYPD's New York/New Jersey Fugitive Task Force. Id. at 387-89. At around 6:00 a.m. on April 15, 2011, Detective Kelly and his team went to petitioner's apartment. Id. at 389-90. The officers did not have an arrest warrant. P.T.T., ECF No. 8-1 at 19. Detective Kelly and the other officers knocked on the door, and an elderly woman opened it. T.T. at 389-91.

---

[4] The medical examiner who conducted the autopsy of Torres' body testified that both the stab wounds and the gunshot wounds could have independently caused Torres' death. T.T. at 288-90.

[5] A taxi driver also testified that he witnessed two men hitting the victim on the back, one of the men running away, and one of the men shooting the victim. T.T. at 749-53. Two baseball caps, two knives, a gun, shell casings, a magazine and gloves were all recovered from the scene. Id. at 571. Blood found on one of the knives was a DNA match to Gavin Torres. Id. at 689-92. DNA from one of the hats was a match to petitioner. Id.

Detective Kelly identified himself and asked if the officers could step in. Id. at 391. The woman gestured for the officers to enter. Id. Once inside the apartment, Detective Kelly saw petitioner and asked him to speak outside. Id. at 391-92. When petitioner and Detective Kelly went outside into the hallway, petitioner was arrested. Id. at 392.

## II.      Procedural History

Prior to trial, petitioner moved to suppress post-arrest statements he made to Detective Perry, arguing that his arrest was unconstitutional because the officers entered his apartment without a warrant. P.T.T. at 97-99; see also Payton v. New York, 445 U.S. 573, 576 ("[T]he Fourth Amendment to the United States Constitution . . . prohibits the police from making a warrantless and nonconsensual entry into a suspect's home in order to make a routine felony arrest.") (citations omitted). The Court held a suppression hearing. See P.T.T., ECF No. 8-1. Detective Kelly testified for the government; petitioner's sister, Minerva Xochitmitl, testified for the defense. Id. The Court denied the motion to suppress, finding that the officers "acted in good faith in believing that the woman at the door consented to their warrantless entry into the apartment" and that "[t]he defendant agreed to accompany the officers into the hallway, where he was formally arrested, thus obviating any Payton issue." ECF No. 8-2 at 6.

Petitioner was tried by jury in Kings County Supreme Court from October 10 to November 8, 2012 before Judge Del Giudice. See T.T., ECF No. 8-3. During jury selection, Judge Del Giudice informed petitioner that he would excuse any potential jurors who could not commit to the time frame of the trial, and petitioner consented to the procedure.[6] Id. at 4-5. Judge Del Giudice relieved prospective jurors if they claimed to have a scheduling conflict. Id. at 12-14. Petitioner's counsel did not object to excusing the jurors on this basis. Id.

---

[6] Petitioner also waived his right to be present during jury selection. Id. at 5.

The jury found petitioner guilty of Manslaughter in the First Degree. Id. at 1115. Petitioner was sentenced to twenty-five years imprisonment to be followed by five years of post-release supervision. Sentencing Tr., ECF No. 9-1 at 17.

Petitioner appealed his conviction to the Appellate Division, Second Department ("Appellate Division"), and raised three grounds: (1) "[h]e was denied his federal and state constitutional rights to be free from unreasonable searches and seizures when the police arrested him in his home without a warrant and entered it after an elderly Spanish-speaking woman opened the door"; (2) the trial court "committed a mode of proceedings error when it permitted prospective jurors to opt out of serving on the jury due to their own subjective and unquestioned belief that they had no time to serve, in violation of petitioner's right to a jury selected from all competent prospective jurors"; and (3) petitioner's sentence of 25 years in prison was "harsh and excessive, given that, among other factors, the trial court disagreed with the jury's verdict, emphasizing its personal opinion that the decedent's death was planned."[7] App. Div. Br., ECF No. 8-4 at 7.

The Appellate Division affirmed petitioner's conviction.[8] People v. Xochimitl, 147 A.D.3d 793 (2d Dep't 2017). Petitioner was granted leave to appeal to the New York Court of Appeals. People v. Xochimitl, 30 N.Y.3d 985 (2d Dep't 2017). On appeal, petitioner argued that his elderly relative's purported consent to enter the apartment was insufficient because she did not speak English, and therefore his warrantless arrest violated his rights under the Fourth

---

[7] Petitioner sought a writ of coram nobis in October 2019. See ECF No. 8-10. The Appellate Division denied petitioner's motion and he was denied leave to appeal. See People v. Xochimitl, 186 A.D.3d 629, 629 (2d Dep't 2020).

[8] The Appellate Division found that the woman who opened the door gave sufficient voluntary consent for police to enter the home and that she had the requisite degree of authority to do so. Xochimitl, 147 A.D.3d at 794. The Court also found that petitioner's claims that the trial court improperly discharged jurors and that he received an excessive sentence were unpreserved and without merit. Id.

Amendment. <u>See</u> App. Brf., ECF No. 8-8. The Court of Appeals unanimously affirmed petitioner's conviction.[9] <u>See</u> <u>People v. Xochimitl</u>, 32 N.Y.3d 1026, 1027 (2018).

On October 26, 2020, petitioner timely filed the instant *pro se* petition, seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254. <u>See</u> Pet., ECF No. 2. Petitioner challenges his conviction on three grounds: (1) the police illegally entered his home without a warrant to arrest him, (2) the trial court improperly discharged jurors based on their scheduling conflicts, and (3) his sentence was excessive.[10] Pet. at 5-8. Respondent opposes this petition. <u>See</u> Resp't Aff. & Mem. of Law, ECF No. 8; Pet. Reply, ECF No. 21.

## DISCUSSION

### I.     Standard of Review

The Antiterrorism and Effective Death Penalty Act ("AEDPA") provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Under the AEDPA, the reviewing court may only grant a habeas petition if the claim "was adjudicated on the merits in State court proceedings" and the state court proceedings:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

---

[9] The Court of Appeals determined that the issue of the legality of petitioner's arrest was unpreserved. <u>Xochimitl</u>, 32 N.Y.3d at 1027. Two judges filed concurrences agreeing in the judgment but writing separately to state their beliefs that law enforcement should obtain a warrant before arresting a suspect in their home. <u>Id.</u> at 1027-31 (Rivera, J., and Wilson, J., concurring).

[10] Petitioner motioned this Court for a stay in abeyance so that he might exhaust a fourth claim raising a violation of his right to counsel. <u>See</u> ECF No. 10. The Court denied the motion, as petitioner had not established good cause for his failure to exhaust the claim and the claim was without merit. <u>See</u> ECF No. 18.

28 U.S.C. § 2254(d). "This is a 'difficult to meet' . . . and 'highly deferential standard'" and review "is limited to the record that was before the state court that adjudicated the claim on the merits." Cullen v. Pinholster, 563 U.S. 170, 181 (2011) (citations omitted). Moreover, a state court's factual findings "shall be presumed to be correct unless the petitioner rebuts that presumption by clear and convincing evidence." Fernandez v. Capra, 916 F.3d 215, 221 n.1 (2d Cir. 2019) (citing § 2254(e)(1)) (internal quotation marks omitted).

A state court decision is "contrary to" clearly established federal law if "the state court reached a conclusion of law that directly contradicts a holding of the Supreme Court" or, "when presented with 'facts that are materially indistinguishable from a relevant Supreme Court precedent,' the state court arrived at a result opposite to the one reached by the Supreme Court." Evans v. Fisher, 712 F.3d 125, 132 (2d Cir. 2013) (quoting Williams v. Taylor, 529 U.S. 362, 405 (2000)). A state court decision is an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413. The Court cautions, however, that "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." Id. at 410; see also Grayson v. Ercole, 691 F.3d 165, 174 (2d Cir. 2012) ("[T]he writ may only issue where the state court's application of the law was not only wrong, but unreasonable."). A federal habeas court may only "issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme Court's] precedents." Harrington v. Richter, 562 U.S. 86, 102 (2011).

## II.    Exhaustion and Procedural Default

A petitioner in custody pursuant to a state court judgment must exhaust his state court remedies prior to seeking federal habeas review. 28 U.S.C. § 2254(b)(1); see also Davila v. Davis, 582 U.S. 521, 527 (2017) ("The exhaustion requirement is designed to avoid the 'unseemly' result of a federal court 'upset[ting] a state court conviction without' first according the state courts an 'opportunity to . . . correct a constitutional violation.'") (citation omitted). To exhaust state court remedies, the petitioner must satisfy the "fair presentation" requirement. Baldwin v. Reese, 541 U.S. 27, 29 (2004). A petitioner fairly presents a claim "only if he has informed the state court of both the factual and the legal premises of the claim he asserts in federal court," such that the state courts were "fairly alerted" to the claim's federal nature. Bierenbaum v. Graham, 607 F.3d 36, 47-49 (2d Cir. 2010) (citation omitted); see also Baldwin, 541 U.S. at 32 ("A litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'"); Acosta v. Artuz, 575 F.3d 177, 188 (2d Cir. 2009) ("[A] claim is not 'fairly presented' to a state appellate court if discovery of that claim requires the court to 'read beyond a petition or a brief (or a similar document)' and conduct its own review of proceedings below.") (quoting Baldwin, 541 U.S. at 32).

In New York, fair presentation of a claim to the Court of Appeals, the state's highest court, requires a petitioner to "include that claim in his letter-application to the Court of Appeals seeking leave to appeal." Carrasco v. Miller, No. 17-CV-7434, 2020 WL 9256469, at *14 (S.D.N.Y. Nov. 13, 2020) (citing Grey v. Hoke, 933 F.2d 117, 120 (2d Cir. 1991)) report and

recommendation adopted by 2021 WL 1040473 (S.D.N.Y. Mar. 18, 2021).[11] A claim that is not exhausted which cannot now be raised is considered to be procedurally defaulted. Jackson v. Conway, 763 F.3d 115, 133 (2d Cir. 2014) (citation omitted).

Procedural default bars federal habeas review of a ground raised to challenge a state court conviction. Id. Procedural default occurs in two ways: (1) a petitioner fails to exhaust state court remedies regarding a claim and so the state courts would find the claim procedurally barred, or (2) a state court rejects a claim on a state law ground that is "independent of the federal question and adequate to support the judgment." Id. (citation omitted). The procedural default doctrine provides that federal courts have no authority to review state court decisions that rest upon adequate and independent state law grounds. Lee v. Kemna, 534 U.S. 362, 375 (2002); see also Green v. Travis, 414 F.3d 288, 294 (2d Cir. 2005) ("A federal habeas court lacks jurisdiction to evaluate questions of federal law decided by a state court where the state court judgment 'rests on a state law ground that is independent of the federal question and adequate to support the judgment[.]'") (quoting Coleman v. Thompson, 501 U.S. 722, 729 (1991)). "The rule applies with equal force whether the state-law ground is substantive or procedural." Lee, 534 U.S. at 375 (citing Coleman, 501 U.S. at 729); Whitley v. Ercole, 642 F.3d 278, 285 (2d Cir. 2011). It applies "even where the state court has also ruled in the alternative on the merits of the federal claim." Glenn v. Bartlett, 98 F.3d 721, 724 (2d Cir. 1996) (citing Velasquez v. Leonardo, 898 F.2d 7, 9 (2d Cir. 1990)); Harris v. Reed, 489 U.S. 255, 264 n.10 (1989) ("Moreover, a state court need not fear reaching the merits of a federal claim in an *alternative* holding. By its very definition, the adequate and independent state ground doctrine requires the federal court to honor

[11] The Clerk of Court is respectfully directed to send petitioner the attached copies of all the unreported cases cited herein.

8

a state holding that is a sufficient basis for the state court's judgment, even when the state court also relies on federal law.").

A state law ground is "only adequate to support the judgment and foreclose review of a federal claim if it is 'firmly established and regularly followed' in the state." Garvey v. Duncan, 485 F.3d 709, 713 (2d Cir. 2007) (quoting Lee, 534 U.S. at 376)."[W]here the case law interpreting New York's preservation rule in criminal proceedings displays consistent application in a context similar to the one before us, that rule is firmly established, regularly followed, and hence adequate for purposes of the independent and adequate state ground doctrine." Richardson v. Greene, 497 F.3d 212, 220 (2d Cir. 2007).

Nevertheless, petitioner may obtain federal habeas review of a procedurally defaulted claim, if petitioner demonstrates either "cause for the default and prejudice," or that "failure to consider the claim will result in a miscarriage of justice (i.e., the petitioner is actually innocent)." Aparicio v. Artuz, 269 F.3d 78, 90 (2d Cir. 2001) (citing Coleman, 501 U.S. at 748–50).

### III.    Petitioner's Claims

Petitioner raises three grounds for habeas review: (1) the police illegally entered his home without a warrant to arrest him, (2) the trial court improperly discharged jurors without a proper voir dire denying him a fair and impartial jury, and (3) his sentence was excessive. Pet. at 2.

#### a.   Warrantless arrest

Petitioner argues that the police entered his home without a warrant to arrest him in violation of his rights under the Fourth Amendment. Id. at 5. This argument is barred from federal habeas review by Stone v. Powell, 428 U.S. 465 (1976). In Stone, the Supreme Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal

habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." 428 U.S. at 481-82. A habeas petitioner may only be granted federal habeas review on a Fourth Amendment claim in two instances: "(a) if the state has provided no corrective procedures at all to redress the alleged fourth amendment violations; or (b) if the state has provided a corrective mechanism, but the defendant was precluded from using that mechanism because of an unconscionable breakdown in the underlying process." Capellan v. Riley, 975 F.2d 67, 70 (2d Cir. 1992) (citing Gates v. Henderson, 568 F.2d 830, 840 (2d Cir. 1977)).

Petitioner raised his Fourth Amendment claim at a pre-trial suppression hearing on September 24, 2012. See P.T.T., ECF No. 8-1. Judge Del Giudice found that the officers did not violate petitioner's Fourth Amendment rights and denied petitioner's motion to suppress his post-arrest statements to police. ECF No. 8-2 at 6 ("Although the apprehending officers did not have either an arrest or a search warrant, the People have satisfied their burden of establishing that the police acted in good faith in believing that the woman at the door consented to their warrantless entry into the apartment.").[12] Petitioner raised this issue on appeal, and the Appellate Division affirmed the trial court's decision. Xochimitl, 147 A.D.3d at 794. Petitioner was granted leave to appeal. Xochimitl, 30 N.Y.3d at 985. The New York Court of Appeals affirmed the Appellate Division's decision. Xochimitl, 32 N.Y.3d at 1026-1027.

As such, the trial court's suppression hearing provided plaintiff with a corrective procedure to redress his alleged Fourth Amendment violation, and plaintiff had a full and fair opportunity to litigate this claim in state court. Accordingly, petitioner's Fourth Amendment claim is barred from federal habeas review.

---

[12] The trial court further noted that petitioner voluntarily followed the police outside where he was arrested, thus, there was no Payton violation. ECF No. 8-2 at 6.

### b. Jury dismissal

Petitioner claims that the trial court's dismissal of potential jurors based on their alleged scheduling conflicts, without further questioning, violated his Sixth Amendment right to an impartial jury. Pet. at 2, 7. Respondent argues that petitioner failed to contemporaneously object to the voir dire procedure, as required by N.Y. Crim. Proc. Law § 470.05(2), and therefore the claim is unpreserved and barred from habeas review by an independent and adequate state law ground.[13] See Resp't Aff. & Mem. of Law, ECF No. 8 at 16-17; Harris v. Great Meadow Corr. Facility, No. 17-CV-760, 2020 WL 1000066, at *6 (E.D.N.Y. Mar. 2, 2020) ("New York's contemporaneous objection rule 'is a firmly established, independent, and adequate state ground that bars habeas review of the merits of a constitutional claim.'") (quoting Williams v. Artus, 691 F. Supp. 2d 515, 524 (S.D.N.Y. 2010)).

This claim is procedurally barred from federal habeas review. See Coleman v. Thompson, 501 U.S. 722, 750 (1991), holding modified by Martinez v. Ryan, 566 U.S. 1 (2012). Petitioner's counsel did not object to the trial court's dismissal of jurors based on their alleged scheduling conflicts during voir dire. T.T. at 12-14. "[A] federal habeas petitioner who has failed to comply with a State's contemporaneous-objection rule at trial must show cause for the procedural default and prejudice attributable thereto in order to obtain review of his defaulted constitutional claim." Murray v. Carrier, 477 U.S. 478, 485 (1986) (citing Wainwright v. Sykes, 433 U.S. 72, 87 (1977)). Petitioner fails to demonstrate either cause or prejudice here.[14]

---

[13] Petitioner raised this claim on appeal to the Appellate Division. Xochimitl, 147 A.D.3d at 794. The Court rejected the claim as unpreserved and without merit. Id. Respondent also contends that this claim is procedurally barred because it was not sufficiently raised in petitioner's application for leave to appeal to the New York Court of Appeals. Resp't Aff. & Mem. of Law, ECF No. 8 at 16.

[14] Moreover, petitioner's counsel agreed to the Court's proposed procedure to dismiss jurors based on an alleged scheduling conflict. T.T. at 4-5. Petitioner waived his right to be present at voir dire and agreed to have his counsel represent him during jury selection. Id.

Further, the claim is without merit. See Harris, 2020 WL 1000066, at *6 (finding that habeas petitioner's claim that the trial court erred in dismissing potential jurors based on alleged personal or professional obligations was meritless). The trial court's dismissal of potential jurors based on their alleged scheduling conflicts when selecting for a lengthy trial is not a procedure that violates the Constitution. The Appellate Division's holding that petitioner's jury dismissal claim was unpreserved and without merit was neither "a conclusion of law that directly contradicts a holding of the Supreme Court" nor a decision showing that "when presented with 'facts that are materially indistinguishable from a relevant Supreme Court precedent,' the state court arrived at a result opposite to the one reached by the Supreme Court." Evans, 712 F.3d at 132 (quoting Williams, 529 U.S. at 405). Accordingly, even if petitioner's claim was not procedurally barred, it would be denied as the state court decision was not contrary to or an unreasonable application of clearly established federal law. See 28 U.S.C. § 2254(d)(1).

     **c.  Excessive sentence**

Petitioner contends that his sentence of twenty-five years imprisonment to be followed by five years of post-release supervision is excessive in light of the evidence presented at trial and the mitigating evidence presented to Judge Del Giudice at sentencing. Pet. at 2, 8.

When the length of a sentence is within the prescribed state law range, an excessive sentence claim is not cognizable on federal habeas review. White v. Keane, 969 F.2d 1381, 1383 (2d Cir. 1992) ("No federal constitutional issue is presented where . . . the sentence is within the range prescribed by state law."); see also Cardova v. Lavalley, 123 F. Supp. 3d 387, 398 (E.D.N.Y. 2015) ("It is well settled that an excessive sentence claim may not be raised as grounds for habeas corpus relief if the sentence is within the range prescribed by state law.")

(citing <u>Williams v. Lavalley</u>, No. 12-CV-1141, 2014 WL 1572890, at *5 (N.D.N.Y. Apr. 17, 2014)).

Petitioner was convicted of first-degree manslaughter, a class B felony offense, for which the court must fix a sentence of at least five years but not more than twenty-five years of imprisonment. <u>See</u> Resp't Aff. & Mem. of Law, ECF No. 8 at 19; N.Y Penal Law §§ 125.20[1]; 70.02 [1][a], [3][a]. Here, petitioner's sentence is within the range proscribed by New York state law. Therefore, petitioner's excessive sentence claim is not cognizable on federal habeas review.

**CONCLUSION**

Accordingly, it is respectfully recommended that petitioner's application for a writ of habeas corpus under 28 U.S.C. § 2254 should be denied. As petitioner has not made a substantial showing of the denial of any constitutional right, no certificate of appealability should be issued. 28 U.S.C. § 2253; <u>see</u> <u>Lozada v. United States</u>, 107 F.3d 1011, 1017 (2d Cir. 1997), <u>abrogated on other grounds by</u> <u>United States v. Perez</u>, 129 F.3d 255, 259-60 (2d Cir. 1997) (discussing the standard for issuing a certificate for appealability). It is further recommended that for purposes of an appeal *in forma pauperis*, the Court should certify pursuant to 28 U.S.C. § 1915(a) that any appeal from a judgment denying this petition would not be taken in good faith. <u>Coppedge v. United States</u>, 369 U.S. 438 (1962).

**FILING OBJECTIONS TO THE REPORT AND RECOMMENDATION**

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. <u>See also</u> Fed. R. Civ. P. 6. Any request for an extension of time in which to file objections must be made within the fourteen-day period. Failure to timely file an objection to the Report and Recommendation generally waives any further judicial review. <u>DeLeon v. Strack</u>, 234

F.3d 84, 86 (2d Cir. 2000); <u>Spence v. Superintendent, Great Meadows Corr. Fac.</u>, 219 F.3d 162, 174 (2d Cir. 2000); <u>see also</u> <u>Thomas v. Arn</u>, 474 U.S. 140, 155 (1985).

SO ORDERED.

/S/

LOIS BLOOM
United States Magistrate Judge

Dated: October 30, 2023
        Brooklyn, New York